UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert Oroujian, | ) | CIVIL ACTION NO. 2:13-2581-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Delfin Group USA LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff asserting civil rights claims against the Defendant Delfin Group USA, LLC. This case is one of nine (9) separate cases filed against this same Defendant, all of which have been assigned to the undersigned United States Magistrate Judge.

The Defendant has filed a motion to dismiss Plaintiff's Amended Complaint on the grounds that Plaintiff has failed to set forth sufficient factual matter to state any plausible claim for relief. Plaintiff has filed a memorandum in opposition to the Defendant's motion, to which the Defendant has filed a reply. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



### Allegations of the Amended Complaint

Plaintiff, a former employee of the Defendant, alleges that he is of Armenian nationality, and asserts federal claims in his Amended Complaint pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, as well as a state law contract claim. Plaintiff alleges that on or about December 2011, he and the Defendant "entered into a contract" whereby the Defendant employed him to work for a "an indefinite term". Plaintiff alleges that he worked in the Defendant's shipping department, and was "efficient and effective in his work". Plaintiff further alleges that the Defendant had a handbook (attached to the Amended Complaint as Exhibit A) that "created a contract" between Plaintiff and the Defendant. Plaintiff specifically alleges that the handbook "uses mandatory language creating a contractual agreement between the Plaintiff and the Defendant for employment", and did not contain a disclaimer that met the requirements of S.C. Code Ann. § 41-1-110. Plaintiff then goes on to set forth specific language from the handbook wherein Defendant states that all employment decisions will be based on job related merit without regard to race or national origin, that harassment based on any prohibited conduct is also prohibited, and that any violation of this policy "will be subject to disciplinary action resulting in immediate termination of employment".

Plaintiff further alleges that the handbook has "mandatory language" setting forth various work rules and prohibitions, and quotes language from the handbook setting forth rules with regard to clothing, absences, solicitations, doctor visits, comp time, use of company property and equipment, and use of company software and computer equipment. Finally, Plaintiff quotes language from the handbook which provides that the Defendant "will not tolerate retaliation against



any employee for making a complaint" regarding prohibited conduct. Plaintiff alleges that the "contract indicated he would be paid for working", and that he "performed his contractual obligations and despite the fact he was discriminated against".

Plaintiff then alleges that John Gordon is the Defendant's President and "alter-ego" of the Defendant, and that Gordon "demeaned" him with a number of racial comments and demonstrated a pattern of discriminatory treatment towards Armenians by making disparaging remarks, reassigning Armenians to menial tasks, and laying them off in disproportionate numbers. Plaintiff alleges that Gordon's comments were "severe, pervasive and happened almost daily". Plaintiff further alleges that Gordon "would often yell at the Plaintiff and make demeaning remarks to him in front of others, including the Defendant's supervisor over the Plaintiff". Plaintiff alleges that he complained directly to Gordon about the way he spoke to the Plaintiff, and also complained to Human Resources about the racial comments made by Gordon, and that although Gordon apologized to the Plaintiff, that after confronting Gordon, he [Gordon] "created a hostile work environment for the Plaintiff in retaliation for the Plaintiff's earlier reporting of Mr. Gordon's racial discrimination". Plaintiff alleges that Gordon continued his racial comments towards the Plaintiff, attempted to demote the Plaintiff, and continuously assigned Plaintiff to menial tasks such as cutting the grass, dumping oil, and janitorial duties, even though Plaintiff had been hired for the shipping department. Plaintiff alleges that although he complained to Veronika Babayan, Human Resources employee, and also to Bo Herbert, he was constantly retaliated against and subjected to poor treatment, which created a hostile work environment, and was eventually wrongfully terminated by the Defendant on or about December 6, 2012.



In his **First Cause of Action**, Plaintiff alleges that he was retaliated against and terminated based on his nationality, race and color in violation of Title VII of the Civil Rights Act. Plaintiff further alleges that the unlawful treatment he received was discrimination against him based on his nationality, race or color, and that the Defendant treated non-Armenian employees more favorably than it treated the Plaintiff. Plaintiff also alleges that the Defendant's wrongful actions created a hostile work environment.

In his **Second Cause of Action**, Plaintiff alleges that he was subjected to discrimination and terminated based on his nationality, race and color in violation of 42 U.S.C. § 1981. Plaintiff further alleges that he was retaliated against and subjected to a hostile work environment.

In his **Third Cause of Action**, Plaintiff asserts a state law claim for breach of contract. Plaintiff alleges that he was efficient and effective in his work, and that the Defendant breached his contract of employment by discriminating against him due to his race.

Plaintiff seeks monetary damages, to include reinstatement of benefits and front pay. See generally, Amended Complaint.

### Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply

4



considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004). For the reasons set forth hereinbelow, the Defendant's motion should be **granted**, in part, and **denied**, in part.

**Exhaustion**. Plaintiff alleges three separate claims under both Title VII and § 1981 in his first two Causes of Action: retaliation, hostile work environment, and disparate treatment.[2] To proceed with these claims under Title VII, Plaintiff must first have first exhausted his administrative remedies; Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC [or SCHAC]"]; and Defendant asserts in its motion that Plaintiff's Title VII Cause of Action should be dismissed for failure of the Plaintiff to plead satisfaction of all conditions precedent necessary to filing suit.[3] However, Plaintiff specifically alleges that he filed

---

[2]Although these are three separate legal claims; see generally Shetty v. Hampton University, No. 12-58, 2014 WL 280448 at * 5 (E.D.Va. Jan. 24, 2014) [Claim for disparate treatment based on national origin is a separate and distinct claim from a hostile work environment claim]; Murphy v. Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011) [Finding that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims that should be alleged in separate counts]; as noted Plaintiff has asserted all three in each of his First and Second Causes of Action. Since these are separate claims, Plaintiff should have asserted each in a separate cause of action; however, his failure to do so is not in and of itself grounds to dismiss one or all of these claims at this time. See Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010)[Plaintiff only required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]; Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim].

[3]There is no administrative exhaustion requirement for a § 1981 claim. Caetio v. Spirit Coach, LLC, 992 F.Supp.2d 1199, 1209 (N.D.Ala. 2014) ["There are no administrative prerequisites to the maintenance of a § 1981 claim."].

5



a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC), that he received his right to sue letter on or about June 26, 2013, and thereafter timely filed his Complaint. Amended Complaint, ¶ 2. Plaintiff also specifically alleges that the Defendant meets the definition of an "employer" under Title VII. Id., ¶¶ 6-8. This argument for dismissal of Plaintiff's Title VII Cause of Action is therefore without merit.[4]

**Disparate Treatment Claim**. Plaintiff's disparate treatment claim is based on his allegation that he was subjected to racial and/or national origin discrimination when he was treated

---

[4]It should also be noted that, while Plaintiff cites Title VII and § 1981 as being the jurisdictional basis for his federal claims; see Amended Complaint, ¶¶ 1 and 2; he also at various points and times in the Amended Complaint references 42 U.S.C. ¶ 1983 and the "Equal Employment Opportunity Act", although he does not appear to assert any specific claims under these statutes. In any event, it appears that any "Equal Employment Opportunity Act" claim would be subsumed by, and be part and parcel of, his Title VII claim, while Plaintiff cannot maintain a claim against this Defendant under § 1983 because the Defendant is not a public actor. Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002) [Private actors not subject to liability under § 1983]. Therefore, to the extent Plaintiff has intended to assert claims for relief under either of these two statutes, any such claims should be dismissed.

Plaintiff also references the South Carolina Human Affairs Law (SCHAL) at various points in his Complaint, which would be a claim under state law. However, as was the case with Plaintiff's references to § 1983 and the "Equal Employment Opportunity Act", Plaintiff never discusses his discrimination claims separately under a SCHAL analysis. While the analytical framework for considering Plaintiff's claims under SCHAL would be the same as that for his Title VII claim; see Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]; Robinson v. BGM America, Inc., ___ F.Supp. 2d ___, 2013 WL 4042187 at * 22 (D.S.C. Aug. 8, 2013); SCHAL does have a different timetable for exhaustion of remedies prior to filing of a lawsuit. See S.C.Code Ann. § 1-13-90(d)(6). Plaintiff's Amended Complaint does not contain any allegations relating to the exhaustion of his administrative remedies under SCHAL, and therefore to the extent Plaintiff is attempting to assert his claims under SCHAL, that statute should also be dismissed as an avenue for relief in the Complaint.



disparately by the Defendant based on these characteristics.  Title VII makes it unlawful "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. 2000e-2. To pursue this claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [his] race, and that the discrimination interfered with a contractual interest."[5]  Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).[6]

In order to survive Defendant's motion to dismiss and proceed with these claims, Plaintiff's Amended Complaint must set forth sufficient factual matters to state a plausible claim for intentional discrimination based on his race and/or national origin.  This claim may be proved either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7]  Under the framework established by the Supreme Court in McDonnell

_____

[5]While Plaintiff asserts that he had an employment contract with the Defendant, even if he did not; see, discussion, infra; that would not defeat his § 1981 claim.  See Sellers v. South Carolina Autism Soc., Inc., 866 F.Supp. 2d 692, 695-698 (D.S.C. 2012) [Concluding that "at-will employment in South Carolina is contractual in nature and may support a claim under Section 1981."].

[6]Section 1981 is not applicable to "national origin" claims.  See Lee v. Sony BMG Music Entertainment, Inc., 557 F.Supp.2d 418, 424 (S.D.N.Y. 2008)["[N]ational origin-based discrimination claim brought under section 1981 [ ] dismissed with prejudice, because that statute does not cover national origin."].  Plaintiff's identification of himself as an "Armenian", however, is sufficient for purposes of a Rule 12 Motion to Dismiss to allow his § 1981 claim to proceed.  See Fonseca v. Sysco Food Sevs. of Arizona, Inc., 374 F.3d 840 (9th Cir. 2004)[While national origin discrimination is not within ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups.]; see also Topadzhilchan v. Glendale Police Dept., No. 10-387, 2010 WL 2740163, at * 5 (C.D.Cal. July 8, 2010) [Finding that Plaintiffs, as Armenian-Americans, were members of an ethnic minority for purposes of a § 1981 discrimination claim.].

[7]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute.  See Ross v. Kansas City Power & Light

(continued...)

7



Douglas, Plaintiff can meet this standard (at least for purposes of a motion to dismiss) through allegations sufficient to reasonably infer a prima facie case of discrimination;[8] i.e., by showing that 1) he is a member of a protected class; 2) he was qualified for the job at issue; 3) he was subjected to an adverse employment action; and 4) that the position was filled ( in the case of termination) by someone who is not a member of his protected class, or there is some other evidence sufficient to give rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); see also Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Plaintiff has alleged in his Amended Complaint that he is a member of a protected class (Armenian by race and nationality), that he was qualified for his job and performing his job

---

[7](...continued)
Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997). Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII also applies to any claims Plaintiff has asserted under § 1981.

[8]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).

8



duties well, and that he was subjected to an adverse employment action when he was terminated. With respect to the fourth prong of his prima facie case; i.e., whether Plaintiff has alleged factual allegations sufficient to give rise to a plausible claim that the Defendant discriminated against him or terminated him because of his race and/or national origin,[9] Plaintiff alleges that Gordon had a pattern of discriminatory treatment towards Armenians, including making disparaging remarks, reassigning Armenians to menial tasks, and laying them off in disproportionate numbers; that Gordon also directed a number of racial comments towards the Plaintiff, including doing so in front of Plaintiff's supervisor as well as other employees; and that Gordon attempted to demote the Plaintiff while continuously assigning him to menial tasks such as cutting the grass, dumping oil, and janitorial duties, even though Plaintiff had been hired for the shipping department, before finally terminating the Plaintiff due to his racial animosity towards Armenians.  Cf. Awad v. City of New York, No. 13-5753, 2014 WL 1814114 at * 3 (E.D.N.Y,. May 7, 2014); but cf. Nichols v. Truscott, 424 F.Supp. 2d 124, 137 (D.D.C. Mar. 30, 2006).

Liberally construed, these allegations are sufficient to raise a "reasonable expectation" that discovery will reveal evidence sufficient to give rise to an inference of unlawful discrimination to survive a Rule 12 motion to dismiss.  See Gladden, No. 11-3120, 2012 WL 3009275 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; see also Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the

---

[9]There is also no allegation that he was replaced by someone from outside of his protected class.

9



Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999); <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing <u>Harrison v. United Postal Service</u>, 840 F.2d 1149, 1152 (4th Cir. 1988); <u>see also</u> <u>Vogt</u>, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].

Therefore, the Defendant is not entitled to dismissal of Plaintiff's disparate treatment claim as set forth in his First and Second Causes of Action at this time.

**Retaliation Claim**.  With respect to Plaintiff's claim of retaliation, in order to survive the Defendant's motion to dismiss his retaliation claim, Plaintiff's allegations must be sufficient to reasonably infer a <u>prima facie</u> case of retaliation;[10] i.e., by showing that 1) he engaged in activity protected under Title VII and § 1981[11]; 2) the Defendant took an adverse employment action against him; and 3) a causal connection exists between the protected activity and the adverse action.  <u>Lettieri v. Equest, Inc.</u>, 478 F.3d 640, 650 (4th Cir. 2007); <u>Williams v. Cerberronics, Inc.</u>, 871 F.2d 452, 457

---

[10]<u>See</u> <u>also</u>, Note 8, <u>supra</u>.

[11]Section "1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it." <u>University of Texas Southwestern Medical Center v. Nasser</u>, 133 S.Ct. 2517, 2529 (2013) (citing <u>CBOCS West Inc. V. Humphries</u>, 553 U.S. 442, 445 (2008).



(4th Cir. 1989); <u>Munday v. Waste Management of North America, Inc.</u>, 127 F.3d 239, 242 (4th Cir. 1997); <u>see</u> <u>Ennis</u>, 53 F.3d at 58 [The exact standard to be used in establishing a <u>prima</u> <u>facie</u> case is flexible depending on the factual situation and the claim alleged].

       Defendant argues that Plaintiff's retaliation claim is "vague, ambiguous, [and] confusing." However, after considering the arguments of counsel, accepting the allegations and the pleading is true, and drawing all reasonable factual inferences from those allegations in favor of the Plaintiff, the undersigned concludes that, at least at this point in the proceedings, Plaintiff's retaliation claim should be allowed to proceed. <u>See</u> <u>Austen</u>, 709 F.Supp.2d at 172 [<u>Iqbal's</u> plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]. Plaintiff alleges in his Amended Complaint that he complained directly to Gordon about the way he spoke to the Plaintiff as well as to Human Resources about Gordon's racial comments towards him. <u>Cf.</u> <u>Rodas v. Town of Farmington</u>, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]; <u>Bowman v. Holopack Intern. Corp.</u>, No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19, 2007)["[T]he opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures."]. Plaintiff alleges that after he engaged in this protected conduct, Gordon apologized to him, but then continued thereafter to make racial comments towards the Plaintiff and in addition attempted to demote the Plaintiff while assigning Plaintiff to perform menial tasks such as cutting the grass, dumping oil, and janitorial duties, even though Plaintiff had



been hired to work in the shipping department. Plaintiff alleges that Gordon then wrongfully terminated him from his position on or about December 6, 2012, even though he was efficient and effective in his work.

These allegations are sufficient for a Rule 12 motion to dismiss to create an inference of a causal connection between Plaintiff's protected activity and the adverse actions taken against him. Gladden, 2012 WL 3009224 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Wolman v. Tose, 467 F.2d 29, 33, n. 5 (4th Cir. 1972)["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present."]; Cf. Awad, 2014 WL 1814114 at * 3; but cf. Nichol, 424 F.Supp. 2d at 137. Therefore, the Defendant is not entitled to dismissal of Plaintiff's retaliation claim as set forth in his First and Second Causes of Action at this time. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level]; Veney, 293 F.3d at 730 ["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988).

**Hostile Work Environment Claim**. To avoid dismissal of his hostile work environment claim, Plaintiff's Amended Complaint must have factual allegations sufficient to state



a plausible claim that 1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on his race and/or national origin; 3) the conduct was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to his employer.  EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).

Defendant argues that the allegations of Plaintiff's Amended Complaint fail to meet the standards for a hostile work environment claim because Plaintiff only asserts "some unspecified and vague comments by Delfin's President were 'severe and pervasive'", thereby allegedly creating a hostile work environment.  Defendant contends that these allegations are mere "legal conclusions and not entitled to the assumption of truth".  Defendant's Brief, p. 9, n. 5.  The undersigned is constrained to agree.  Plaintiff has failed to set forth any *factual* allegations (as opposed to *conclusory* allegations) sufficient to give rise to a plausible claim that he was subjected to harassment severe and pervasive enough to effect a term, condition, or privilege of employment.  Rather, Plaintiff only alleges in a general and conclusory manner that the Defendant "demonstrated a pattern of discriminatory treatment towards Armenians by making disparaging remarks, reassigning Armenians to menial tasks, and laying them off in disproportionate numbers", that he had been subjected to "a number of [demeaning] racial comments" by Gordon, and that Gordon's comments were "severe, pervasive and happened almost daily", including in front of others.  These are all quintessential



conclusory allegations lacking any factual support. Cf.Robertson v. Dodaro, 767 F.Supp. 2d 185, 200 (D.D.C. 2011) [Plaintiff failed to establish hostile work environment claim where his assertion was that "work became emotionally draining, interaction with supervisors became stressful and combative, and efforts were consistently made to demean and belittle the Plaintiff and deride his work product"] [internal citations omitted]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976) ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Ashcroft v. Iqbal, 556 U.S. 681, 129 S.Ct. 1937 (2009) [Allegations that are no more than conclusions are not entitled to the assumption of truth].

While Plaintiff does set forth some specific factual allegations that Gordon attempted to demote him and continuously assigned him to menial tasks such as cutting the grass, dumping oil and janitorial duties, a plain reading of these allegations from the Complaint is that Gordon subjected Plaintiff to this treatment out of retaliation for Plaintiff having complained of discriminatory conduct. That of course is a separate claim, already discussed herein, supra. See Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1344 n. 149 (N.D.Ga. Oct. 16, 2006)["A hostile work environment claim is a separate and distinct cause of action under Title VII, and requires a different analytical approach than a traditional retaliation claim"]. However, even assuming this treatment (if proved) would be sufficient to establish a retaliation claim, that does not mean it meets the wholly separate standards for a hostile work environment claim. Cf. Burlington Northern and Santa Fe Railroad Co. v. White, 548 U.S. 53, 68 (2006)[Plaintiff alleging *retaliation* need show only that the employer did something that would likely deter a reasonable individual in the Plaintiff's



circumstances from protesting what he perceived to be unlawful discrimination]; Wells v. Gates, 336 F.Appx. 378, 388 (4th Cir. 2009) [For conduct to be sufficient for a *hostile work environment claim*, [t]he harassment must be extreme"].  Hence, even if the conduct complained of was in retaliation for protected conduct (instead of based on Plaintiff's race and/or nationality),[12] the mere allegation of Plaintiff's Amended Complaint that Gordon required him to perform menial tasks and "attempted" to demote him (Plaintiff does not allege that this event was ever even accomplished) is insufficient to raise a "reasonable expectation" that discovery will reveal evidence of "severe" and "pervasive" conduct so as to meet the standard for an abusive work environment, which is what is required for this Cause of Action.  Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 21-22 (1993) [Harassment must be severe or pervasive enough to create an abusive work environment]; Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Slate v. Public Defender Service for the District of Columbia, ____ F.Supp.2d ___, 2014 WL 1315238 at * 18, n. 14 (D.D.C. 2014); Latham v. Donahue, ___ F.Supp. 2d ___, 2014 WL 1876145 at * 5 (N.D.Ill. May 9, 2014) [To establish severity or pervasiveness, Plaintiff must address factors such as the frequency, severity and threatening or humiliating nature of the discriminating conduct and whether it interferes with work performance];

---

[12]While there is a split in authority as to whether a hostile work environment claim can be based on retaliation; cf. Kline v. Utah Anti-Discrimination and Labor Div., 418 Fed.Appx. 774, 781, n. 2 (10th Cir. 2011) [Noting this theory of relief had not been recognized by the 10th Circuit at that time]; Cleveland v. Southern Disposal Waste Connections, 491 Fed.Appx. 698, 707 (6th Cir. 2012) [Theory recognized in Sixth Circuit]; see also Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012); this claim for relief has been recognized in the Fourth Circuit, which is binding authority on this Court.  See Wells, 336 Fed. Appx. at 387 [Noting standard for Title VII hostile work environment claim based on retaliation]; Van Gunten v. Maryland, 243 F.3d 858, 869-870 (4th Cir. 2001).



Manley v. Memorial Hosp. of Salem, No. 11-2117, 2012 WL 32926 at * (D.N.J. Jan. 5, 2012) [Dismissing hostile work environment claim where Plaintiff only generally pled, without much detail, that her employer told her that they would get rid of her because of her race, assigned her to less favorable work shifts and assignments, isolated her from other workers, and used racial slurs]; see also Hampton v. Vilsack, 760 F.Supp.2d 38, 56–57 (D.D.C. 2011) ["Plaintiff cannot . . . rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile environment claim."] (citing Franklin v. Potter, 600 F.Supp.2d 38, 76 (D.D.C.2009) ["Because plaintiff's allegedly hostile events are the very employment actions he claims are retaliatory, he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim."] (internal quotation marks and citations omitted).

       Finally, although Plaintiff also alleges that he was terminated , that discreet act does not save his hostile work environment claim where he has otherwise failed to allege sufficiently severe and pervasive conduct to give rise to a plausible claim for relief under the applicable standards for a hostile work environment claim.  Baird v. Gotbaum, 662 F.3d 1246, 1252 (D.C.Cir. 2011) ["]A] Plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard"]; Kelly v. Dun & Bradstreet, Inc., 557 Fed.Appx. 896, 900 (11th Cir. 2014)"[D]iscrete acts, such as termination . . ., cannot alone form the basis of a hostile work environment claim"]; Wade v. District of Columbia, 780 F.Supp.2d 1, 19 (D.D.C.2011) [rejecting plaintiff's effort to transform amalgamation of disparate treatment claims into cause of action for hostile work environment for lack of connection in pervasive pattern of severe harassment] (citing Lester v. Natsios, 290 F.Supp.2d 11, 33 (D.D.C. 2003) ["Discrete acts constituting discrimination or retaliation claims ... are different in kind from a hostile work environment claim



that must be based on severe and pervasive discriminatory intimidation or insult.")].

In sum, while the undersigned has concluded that Plaintiff's allegations are sufficient, at least at this stage of the proceedings, to state a plausible claim for disparate treatment and retaliation; see discussion, supra; they do not meet the requirements to establish the third prong of his hostile work environment claim. Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Iqbal, 129 S.Ct. at 1949 [Claim subject to dismissal where Plaintiff fails to set forth sufficient factual matters to state a plausible claim for relief "on its face"]; House, 824 F.Supp. at 485 [Conclusory allegations insufficient to maintain claim]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Therefore, the Defendant is entitled to dismissal of Plaintiff's hostile work environment claim set forth in his First and Second Causes of Action.

**Breach of Contract Claim**. In his Third and final Cause of Action, Plaintiff asserts a state law claim for breach of contract. Defendant asserts that this claim is subject to dismissal because Plaintiff has failed to set forth factual allegations sufficient to give rise to a plausible claim that he had an employment contract with the Defendant.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an



employment contract beyond the at-will relationship . . . .". Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment"].  After careful review of the allegations of the Complaint, the undersigned concludes that Plaintiff has failed to plead sufficient factual allegations to state a plausible claim that he had an employment contract with the Defendant.

Plaintiff does not assert that he had an actual employment contract with the Defendant. Rather, he contends that the Defendant's employee handbook contained sufficient "mandatory" language to make its terms an enforceable "contract".  Cf. Grant v. Mount Vernon Mills, Ins., 634 S.E. 2d 15, 20 (S.C.Ct.App. 2006)[Employer can alter an employee's at-will status through mandatory language in a handbook].  Plaintiff alleges that the Defendant's employee handbook "uses mandatory language creating a contractual agreement", and did not contain a disclaimer that met the requirements of S.C.Code Ann. § 41-1-10. [13]  Plaintiff also alleges that the Defendant "entered into

_____

[13]S.C.Code Ann. § 41-1-10 provides:

It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent . . . shall not create an express or implied contract of employment if it is conspicuously disclaimed.  For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the

(continued...)



a contract" whereby the Defendant employed him to work for "an indefinite term". Finally, Plaintiff

cites specific language from the handbook setting forth various rules and regulations of the

Defendant, such as appropriate clothing for employees and the Defendant's policy on absences and

comp time, etc., as well as language setting forth the Defendant's anti-discrimination policy, which

Plaintiff alleges constitutes mandatory and enforceable contractual terms of employment. Plaintiff

then alleges in his Third Cause of Action that he was efficient and effective in his work, and that the

Defendant breached his contract of employment by discriminating against him due to his nationality,

race, and color in violation of the handbook's anti-discrimination requirements. A copy of the

employee handbook itself has also been provided to the Court, both as an attachment to Plaintiff's

Amended Complaint, and as an exhibit by the Defendant.[14]

       These allegations do not set forth a plausible claim that Plaintiff had a contract of

---

[13](...continued)
employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.

[14]In addition to factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any document that is "integral to and explicitly relied on in the complaint." Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); White v. VNA Homecare, Inc., No. 11-971, 2012 WL 1435432 at * 1 n. 1 (S.D.Ill. Apr. 25, 2012)[Since the handbook is a document referenced in plaintiff's complaint and is central to his claim, the court can consider it on Defendant's 12(b)(6) motion to dismiss]; McClurkin v. Champion Laboratories, Inc., No. 11-2401, 2011 WL 5402970 at * 2 (D.S.C. Nov. 8, 2011)[Attachment by Defendant of employee handbook did not convert motion to dismiss to a summary judgment motion where Plaintiff referred to employee handbook in his complaint]; cf. Smith v. McAlister-Smith Funeral Home, Inc., No. 11-3281, 2012 WL 4378185 at * 3 (D.S.C. Sept. 25, 2012)[Where the court found that it could not consider the employee handbook that Plaintiff attached to memorandum in opposition to motion to dismiss, his objection to the Report and Recommendation, and his improperly filed amended complaint, when Plaintiff had neither attached or referenced the employee handbook in his operative complaint.].



employment with the Defendant.  First, Plaintiff himself alleges in his Amended Complaint that he was employed by the Defendant for an indefinite term, and an employee employed for an indefinite period of time, rather than for a stated period of time, is presumptively considered an employee at will.  Cape v. Greenville School Dist., 618 S.E.2d 881, 883 (S.C. 2005).  Further, the employee handbook not only contains a specific disclaimer advising employees that the handbook is not intended to serve as a contract, create enforceable rights on the part of employees, or alter employees' at-will status, but *every page of the handbook* specifically states at the bottom of each page: "THIS IS NOT A CONTRACT FOR EMPLOYMENT".  Plaintiff also signed an acknowledgment of the disclaimer.  See Court Docket No. 7-3, p. 30.

While Plaintiff alleges (and a review of the handbook itself confirms) that the disclaimer was [arguably] not in compliance with § 41-1-10 because it was not on the first page of the handbook (it followed a "welcome" page and the table of contents), even assuming the allegation of the Complaint that the handbook did not contain a disclaimer meeting the requirements of this statute to be true for purposes of Defendant's motion, this fact does not establish a plausible claim that a contract of employment existed.  While a clear compliance with the terms of the state disclosure statute would obviously be important, it is not required (and certainly does not establish the existence of a contract) if the employee handbook at issue otherwise does not contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship.  Cf. Grant, 634 S.E.2d at 20; Westmoreland v. AB Beverage Co., Inc., No. 05-3475, 2007 WL 274950 at * 13 (D.S.C. Sept. 20, 2007).

Plaintiff has failed to allege in his complaint language from the employee handbook sufficient to establish a plausible claim that his at-will employment relationship was altered by any



such language. See Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Rather, Plaintiff simply alleges that the employee handbook "uses mandatory language" and then cites selected passages from the handbook relating to certain workplace rules and the Defendant's anti-discrimination policy. Indeed, Plaintiff's allegation is that the Defendant breached his contract of employment by breaching the allegedly "mandatory" language of its anti-discrimination policy by discriminating against him due to his nationality, race and color. However, the language cited by the Plaintiff in his Amended Complaint is typical of anti-discrimination language found in most employee handbooks, and has routinely been held by courts not to, by itself, constitute a contract. Cf. Ford v. Musashi S.C., Inc., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), adopting in part and denying in part, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008)["[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship . . .'"]; Fyall v. ATC/Ancom of South Carolina, No. 04-23086, 2005 WL 2656962, at * 4 (D.S.C. Oct. 18, 2005] [same]; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005), citing  McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and Cherella v. Phoenix Technologies, Ltd., 586 N.E.2d 29, 31 (Mass. 1992); King v. Marriott Int'l., Inc., 520 F.Supp.2d 748, 756 (D.S.C. 2007)[Finding that the Defendant's promise that "there will be no discrimination or recrimination against an employee who asserts a complaint against [the defendant] does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated"] (internal quotations omitted); Frasier v. Verizon Wireless, C.A., No. 08-356, 2008 WL 724037, at * 2 (D.S.C. Mar. 17, 2008).

       Rather, to establish that he had a "contract" of employment with the Defendant,



Plaintiff needs to show that he and the Defendant entered into mandatory and binding terms for his employment such as a definite term of employment, buyout provisions, right to severance pay, and other such indices of a contract of employment. Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]. The undersigned has both reviewed the handbook language cited by Plaintiff in his Amended Complaint as well as undertaken an independent review of the employee handbook itself (provided to the Court as an exhibit), and does not find any language sufficient to establish a plausible claim that Plaintiff had a "contract" of employment by virtue of this handbook. Cf. Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Grant, 634 S.E.2d at 21-22; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status]; see also Frey, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"].

        Therefore, the Defendant is entitled to dismissal of this cause of action. Amazon v. PK Management, LLC, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); cf. Williams v. Intier



<u>Automotive Interiors of America, Inc.</u>, No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); <u>see also Harper</u>, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; <u>Perrine</u>, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship"]; <u>Prescott</u>, 516 S.E.2d at 927, n. 8 [In South Carolina, "there is a presumption of at-will employment"].

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's disparate treatment and retaliation claims under Title VII and § 1981 as set forth in his First and Second Causes of Action be **denied** at this time.  However, with respect to all other claims asserted in the Amended Complaint (including not just Plaintiff's Third Cause of Action for breach of contract, but also Plaintiff's hostile work environment claims set forth in his First and Second Causes of Action, as well as any possible claims Plaintiff may have intended to assert under SCHAL, 42 U.S.C. § 1983, or the "Equal Employment Opportunity Act"), it is recommended that the Defendant's motion be **granted**, and that those claims be **dismissed** for the reasons stated.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 7, 2014
Charleston, South Carolina

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

